AMERICAN AIRLINES, Inc., Defendant, Appellant,

v.

John H. MARCHANT, Plaintiff, Appellee.

No. 5214.

United States Court of Appeals First Circuit.

Nov. 22, 1957.

Rehearing Denied Dec. 9, 1957.

William S. Flynn, Providence, R. I., and Andrew B. Goodspeed, Boston, Mass., for appellant.

Joseph V. Cavanagh, Providence, R. I., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment for the plaintiff on a complaint originally filed in a state court, and removed, on

petition of the defendant, to the United States District Court for the District of Rhode Island on the ground of diversity of citizenship. Appeal was also taken from the denial of motions under Rule 50(b), Fed.Rules Civ.Proc., 28 U.S.C.A.

There seems to be no doubt that appellee, a paying passenger in an airplane owned and operated by American Airlines, Inc., suffered painful physical injury by the rupture of his right ear drum during a period while the plane was rapidly gaining altitude in a flight from Los Angeles, California, to Chicago, Illinois.

The main point pressed on appeal is that the trial judge committed error in leaving the case to the jury and in not granting defendant's motion for judgment notwithstanding the verdict. See Rule 50(b), F.R.C.P. This is the only point we deem it necessary to discuss in some detail, though we have considered other alleged errors by the trial judge and find that they do not call for reversal.

Since the plane had to conduct the greater portion of this transcontinental flight at a high altitude, the result inevitably would be that, as the plane gained altitude, there would be a corresponding diminution of the air pressure in the cabin. Accordingly, for the comfort and convenience of the passengers, defendant's plane was equipped with a standard air pressurization system. It was in evidence that the system was pre-set so as to operate automatically during the flight; that the air pressurizing system was set on automatic ratio control so that the cabin pressure decreased at about 185 feet per minute, whereas the plane was gaining altitude at a normal rate of about 500 feet per minute, with the result that when the plane reached an altitude of 5000 feet the cabin pressure would equal the normal atmospheric pressure at an altitude of 1850 feet. On the other hand, the air pressurization system could be re-set by manual controls, within the discretion of the captain. Thus if for any reason the captain decided that he wanted to pressurize the cabin say at 5000 or 4000 feet, he could do so merely by making a new setting on the controls. He could thus, by the manipulation of such manual controls, stop the decrease in cabin pressure, and establish a constant cabin pressure while the plane continued its ascent. Whenever the maximum differential between the cabin pressure and the outside atmosphere reached about 10,000 feet, the cabin pressure would then automatically change at the same rate as the climb of the plane, but even when that maximum differential was reached the captain could still maintain a constant cabin pressure merely by cruising at the existing plane altitude.

Normally, with the operation of the air pressurization system, passengers who are in fit physical condition adjust themselves without injury or discomfort to the air pressure changes. This is because the human ear has a compensatory mechanism for adjusting its inner ear pressure to that of the surrounding air pressure in the cabin. This compensatory mechanism operates automatically by exuding air from the inner ear through the Eustachian tube, so as to equalize the air pressure on the ear drum as the plane continues its ascent.

But sometimes, perhaps due to a mild inflammation of which the passenger might be unaware when he boards the plane, the membrane of the Eustachian tube may temporarily swell, thus blocking this compensatory air passage. It then results that as the plane gains altitude an inequalization of pressure between the middle ear and external ear is built up, producing pain and a bulging of the ear drum, which eventually may be expected to rupture if a pressure differential of 4000 feet or more is built up.

Of course, it was no part of plaintiff's case to show that American Airlines, Inc., was in some way culpably responsible for the condition of his Eustachian tube. But the physical phenomena above described are sufficiently well known so that American Airlines, if it received timely notice of the distress being ex-

perienced by this particular passenger, would be obliged, in the discharge of the duty it owed to its passengers, to use care to mitigate the passenger's distress and thus perhaps to avoid the physical injury which this passenger suffered.

There was ample evidence on plaintiff's behalf, which if believed would warrant a jury in concluding that plaintiff had flown many times without discomfort; that plaintiff felt all right when he boarded this plane, and was unaware of any difficulty with his Eustachian tube; that plaintiff gave timely notice to the stewardess, during the ascent of the plane, that something was wrong, that he was encountering increasing pain in his ear as the plane ascended; that the stewardess did nothing to relieve his distress, but went to the front of the plane and presumably talked to the captain. There was evidence that the stewardess could have furnished plaintiff with an inhalator (of which there was an ample supply aboard) which could have been used to shrink the membrane of the Eustachian tube so that air could pass through it and thereby equalize the pressure and relieve the pain. There was also evidence that defendant, by utilization of the manual controls on the air pressurization system, could have reduced or even stopped the change in cabin pressure which, if that had been done, could reasonably have been expected to relieve the passenger's distressed condition and prevent the eventual injury to his ear drum. We have not rehearsed all the evidence pointing to causal negligence on defendant's part. What we have said is enough to justify our conclusion that the trial judge had to leave the issues of negligence and causation to the jury. Cf. New York, New Haven & Hartford R. R. Co. v. Dox, 249 F.2d 572. Of course it could not have been ruled as a matter of law that plaintiff was guilty of contributory negligence.

A judgment will be entered affirming the judgment and orders of the District Court.