OPINION OF THE COURT
Jasen, J.
This appeal poses the question whether a complaint seeking monetary damages for "educational malpractice” states a cause of action cognizable in the courts.
Appellant entered Copiague Senior High School in September, 1972 and graduated in June, 1976. The thrust of appellant’s claim is that notwithstanding his receipt of a certificate of graduation he lacks even the rudimentary ability to comprehend written English on a level sufficient to enable him to complete applications for employment. His complaint attributes this deficiency to the failure of respondent to perform its duties and obligations to educate appellant. To be more specific, appellant alleges in his complaint that respondent through its employees "gave to [appellant] passing grades and/or minimal or failing grades in various subjects; failed to evaluate [appellant’s] mental ability and capacity to comprehend the subjects being taught to him at said school; failed to take proper means and precautions that they reasonably should have taken under the circumstances; failed to interview, discuss, evaluate and/or psychologically test [appellant] in order to ascertain his ability to comprehend and understand such matter; failed to provide adequate school facilities, teachers, administrators, psychologists, and other personnel trained to take the necessary steps in testing and evaluation processes insofar as [appellant] is cdncerned in order to ascertain the learning capacity, intelligénce and intellectual absorption on the part of [appellant]”.
 Based upon these acts of commission and omission, appellant frames two causes of action, the first of which sounds in "educational malpractice” and the second of which alleges the negligent breach of a constitutionally imposed duty *443 to educate. To redress his injury, appellant seeks the sum of $5,000,000. Upon respondent’s motion, Special Term dismissed appellant’s complaint for failure to state a cause of action. (CPLR 3211, subd [a], par 7.) The Appellate Division affirmed, with one Justice dissenting. There should be an affirmance.
The second cause of action need not detain us long. The State Constitution (art XI, § 1) commands that "[t]he legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated.” Even a terse reading of this provision reveals that the Constitution places the obligation of maintaining and supporting a system of public schools upon the Legislature. To be sure, this general directive was never intended to impose a duty flowing directly from a local school district to individual pupils to ensure that each pupil receives a minimum level of education, the breach of which duty would entitle a pupil to compensatory damages. (See Steitz v City of Beacon, 295 NY 51, 57; Moch Co. v Rensselaer Water Co., 247 NY 160, 169.)
Appellant’s first cause of action bears closer scrutiny. It may very well be that even within the strictures of a traditional negligence or malpractice action, a complaint sounding in "educational malpractice” may be formally pleaded. Thus, the imagination need not be overly taxed to envision allegations of a legal duty of care flowing from educators, if viewed as professionals, to their students. If doctors, lawyers, architects, engineers and other professionals are charged with a duty owing to the public whom they serve, it could be said that nothing in the law precludes similar treatment of professional educators. Nor would creation of a standard with which to judge an educator’s performance of that duty necessarily pose an insurmountable obstacle. (See, generally, Elson, A Common Law Remedy for the Educational Harms Caused by Incompetent or Careless Teaching, 73 NW L Rev 641, 693-744.) As for proximate causation, while this element might indeed be difficult, if not impossible, to prove in view of the many collateral factors involved in the learning process, it perhaps assumes too much to conclude that it could never be established. This would leave only the element of injury and who can in good faith deny that a student who upon graduation from high school cannot comprehend simple English — a deficiency allegedly attributable to the negligence of his educators— has not in some fashion been "injured”.
*444 The fact that a complaint alleging “educational malpractice” might on the pleadings state a cause of action within traditional notions of tort law does not, however, require that it be sustained. The heart of the matter is whether, assuming that such a cause of action may be stated, the courts should, as a matter of public policy, entertain such claims. We believe they should not.
Control and management of educational aifairs is vested in the Board of Regents and the Commissioner of Education (NY Const, art V, § 4; art XI, § 2; Education Law, §§ 207, 305; see Matter of New York City School Bds. Assn. v Board of Educ., 39 NY2d 111, 116; Matter of Ocean Hill-Brownsville Governing Bd. v Board of Educ., 23 NY2d 483, 485). We have only recently observed: "The general legislative and constitutional system for the maintenance of public schools secures review by the board of education and, on the State level, by the Commissioner of Education. The purpose of these provisions 'is to make all matters pertaining to the general school system of the state within the authority and control of the department of education and to remove the same so far as practicable and possible from controversies in the courts.’ (Bullock v Cooley, 225 NY 566, 576-577; see, also, People ex rel. Board of Educ. v Finley, 211 NY 51, 57.)” (James v Board of Educ., 42 NY2d 357, 366.)
In James, we refused to entertain an action to enjoin the administration to pupils in the New York City school system of comprehensive reading and mathematical exams the validity of which had allegedly been compromised. Notwithstanding the existence of a statutory duty (Education Law, § 2590-j, subd 5, par [a]), on the part of the Chancellor of the City School District of the City of New York to administer comprehensive examinations annually, we held that the question whether these examinations had been compromised depriving them of their validity as a gauge of academic achievement rested in the professional judgment and discretion of the chancellor, the board of education and, ultimately that of the Commissioner of Education, rather than in the courts. (James v Board of Educ., 42 NY2d, at p 366, supra; see, also, Matter of Bokhair v Board of Educ., 43 NY2d 855, 856; Matter of Vetere v Allen, 15 NY2d 259, 267, cert den 382 US 825; Bullock v Cooley, 225 NY 566, 576-577, supra; cf. Jones v Beame, 45 NY2d 402, 407.)
This principle applies all the more to the case at hand. To *445 entertain a cause of action for "educational malpractice” would require the courts not merely to make judgments as to the validity of broad educational policies — a course we have unalteringly eschewed in the past-Jbui^-more-importantly, to sit in review of the day-to-day implementation of these policies. Recognition in the courts of this cause of action would constitute blatant interference with the responsibility for the administration of the public school system lodged by Constitution and statute in school administrative agencies. (James v Board of Educ., 42 NY2d, at p 367, supra.) Of course, “[t]his is not to say that there may never be gross violations of defined public policy which the courts would be obliged to recognize and correct.” (Matter of New York City School Bds. Assn. v Board of Educ., 39 NY2d, at p 121, supra.)
Finally, not to be overlooked in today’s holding is the right of students presently enrolled in public schools, and their parents, to take advantage of the administrative processes provided by statute to enlist the aid of the Commissioner of Education in ensuring that such students receive a proper education. The Education Law (§ 310, subd 7) permits any person aggrieved by an "official act or decision of any officer, school authorities, or meetings concerning any other matter under this chapter, or any other act pertaining to common schools” to seek review of such act or decision by the commissioner.
Accordingly, the order of the Appellate Division should be affirmed, with costs.