**Seymour SPRAYREGEN and Shoshana Sprayregen, Plaintiffs,**

**v.**

**AMERICAN AIRLINES, INC., Defendant.**

**No. 82 Civ. 0987 (HFW).**

United States District Court, S.D. New York.

Aug. 24, 1983.

Lipsig, Sullivan & Liapakis, P.C. by John F. Nash, New York City, for plaintiffs.

Moore, Berson, Lifflander & Mewhinney by James A. Gallagher, Jr., Robert A. Faller, Garden City, N.Y., for defendant.

MEMORANDUM DECISION

WERKER, District Judge.

This is a diversity action in which plaintiff Seymour Sprayregen ("Sprayregen")

seeks to recover damages for a permanent hearing loss that he allegedly sustained during a flight aboard an airplane operated by defendant American Airlines, Inc. ("American"). Sprayregen is joined in this action by his wife, who asserts a derivative cause of action. Plaintiffs are citizens of the state of New York. American is a corporation organized under the laws of Delaware with its principal place of business in Dallas-Fort Worth, Texas. The matter presently is before the court on American's motion for summary judgment pursuant to Fed.R.Civ.P. 56.

## FACTS

The relevant facts, as agreed to by the parties, are as follows. On February 1, 1980, Sprayregen, a physician licensed to practice in New York, was a passenger on an American flight traveling from New York City to Phoenix, Arizona. Prior to and during the flight, Sprayregen was suffering from a head cold and upper respiratory infection. Before boarding the plane, he took a "Contac" to relieve his cold symptoms. Sprayregen experienced discomfort in his ears as the flight descended into Phoenix. At no time during the flight did he advise American of this discomfort. It subsequently was determined that plaintiff had suffered a permanent hearing loss.

Sprayregen claims that the hearing loss was caused by sudden pressure changes that occurred while the plane was descending into Phoenix. It is his position that American knew that passengers suffering from a head cold risked damaging or losing their hearing, and that American therefore had a duty to warn its passengers of that risk. American contends that it had no such duty, and that therefore, summary judgment should be granted in its favor.

## DISCUSSION

The issue whether American had a duty to warn Sprayregen of the hazards of flying with a head cold is one of law to be decided by the court. *Donohue v. Copaigue Union Free School Dist.* 64 App.Div.2d 29, 33, 407 N.Y.S.2d 874, 877 (2d Dep't 1978),

aff'd, 47 N.Y.2d 440, 391 N.E.2d 1352, 418 N.Y.S.2d 375 (1979); W. Prosser, *The Law of Torts* § 37 at 206 (4th ed. 1971). In determining whether to recognize a duty of care under the circumstances of a particular case, the court must consider a number of factors, such as the relationship between the parties, the ability of the defendant to devise a practical means of preventing the injury and the extent to which an effective method of prevention can be agreed upon. *Donohue v. Copaigue Union Free School Dist.* 64 App.Div.2d 29, 33, 407 N.Y.S.2d 874, 877 (2d Dep't 1978), aff'd, 47 N.Y.2d 440, 391 N.E.2d 1352, 418 N.Y.S.2d 375 (1979).

As for the relationship between the parties, it is widely established that a common carrier for hire owes its passengers the duty of exercising the highest degree of care for their safety. *E.g., Fleming v. Delta Airlines,* 359 F.Supp. 339, 341 (S.D.N.Y. 1973). Yet, as a result of life's idiosyncracies, certain situations may imperil some passengers but not others. For example, because of Sprayregen's physical condition, altitude changes exposed him to a greater risk of harm than they did to passengers who were not suffering from a similar ailment. The illustration provided in this case, however, is only one of innumerable perils that passengers may face depending upon their peculiar physical or emotional conditions. Should the airline be required to warn its passengers of all such dangers? The court finds that it would be unreasonable to recognize such a duty.

To begin with, it would be extremely difficult for the airline to develop a practical means of preventing an injury that is not likely to be suffered by a fit passenger. It might be suggested that the airline could provide a warning by posting signs, making a notation on the ticket or by distributing a flyer along with the ticket. To do so, however, the airline would have to conduct extensive studies at considerable expense to assure the inclusion in such warnings of every known potential harm. Moreover, the studies would have to run continuously to keep the warnings up to date. Even then, there is a strong possibility that rea-

**18**

sonable minds may disagree as to the effectiveness of such warnings, which, of course, raises the spectre of increased and burdensome litigation. For these reasons, the court concludes that it would be unjust to impose a duty on the airline to warn of hazards that vary according to the particular condition of the passenger. *See generally D'Aleman v. Pan Am. World Airways, Inc.,* 259 F.2d 493, 494 (2d Cir.1958).

■ To be sure, a different rule might apply where the airline was aware of the passenger's peculiar physical or emotional state or of any difficulty or distress that the passenger suffered during the flight. *See American Airlines, Inc. v. Marchant,* 249 F.2d 612, 613–14 (1st Cir.1957) (per curiam). But in this case, there is no evidence that American knew that Sprayregen had a head cold, and it is agreed that Sprayregen never informed American of the discomfort that he experienced upon the descent of the plane. The court therefore finds that American had no duty to warn Sprayregen of the dangers of flying with a head cold.

■ Although the court has found that American had no duty to warn, that does not end the matter. In their pretrial brief, plaintiffs assert that their case is not limited to the duty to warn issue. The complaint alleges that American acted negligently in the operation of the plane during the descent into Phoenix. Since material questions of fact remain as to whether, apart from its failure to warn, American acted negligently in some other respect, the case cannot be disposed of in its entirety on this motion for summary judgment.

## CONCLUSION

For the reasons discussed above, American's motion for summary judgment is denied.

SO ORDERED.