Meyer, J.
(dissenting). Because I cannot accept the distinctions drawn by the majority between this case and Klostermann v Cuomo (61 NY2d 525) and Snow v State of New York (64 NY2d 745), I respectfully dissent.
Klostermann v Cuomo (61 NY2d, at p 531, supra) held that “if a statutory directive is mandatory, not precatory, it is within the courts’ competence to ascertain whether an administrative agency has satisfied the duty that has been imposed on it by the Legislature” and that plaintiffs in that case had (at p 541) “properly petitioned the courts for a declaration of their rights, whether derived from the Federal or State Constitutions, statutes, or regulations.” Plaintiff Torres seeks damages from the city and its employees,[1] and from Little Flower Children’s Services, the child-care institution with which the city contracted, for failure of the city to satisfy duties imposed upon it by statute and regulations, and for failure of defendant Little Flower to satisfy the duties imposed upon it by statute and regulation as well as by its contract with the municipality. The majority, because the dereliction from duty has resulted in plaintiff’s illiteracy, an educational lack, concludes that the policy against involving courts in the selection of educational programs enunciated in Hoffman v Board of Educ. (49 NY2d 121) and Donohue v Copiague Union Free School Dist. (47 NY2d 440) forecloses plaintiff’s claim.
Educational policy is no more involved in Frank Torres’ illiteracy than it was in Donald Snow’s stunted intellectual growth. In Snow’s case those in charge of his custody breached their duty by failing to ascertain that he was totally deaf; in Torres’, what defendants failed to ascertain, though obliged to do so, was that he had no understanding of, or ability to speak in, any language *130 but Spanish while he was being raised in an almost entirely English speaking environment. In Snow’s case the action has been held maintainable because predicated on medical, rather than educational, malpractice; in like manner Torres’ claim should be held maintainable because based on custodial, rather than educational, breach of duty.
Special Term did not discuss the duties of the city at all and as to Little Flower said only that, “The contract required for the arrangement for education, and plaintiff admits he was placed in a public school. As such defendant did not breach its contractual obligation.” The Appellate Division affirmed, without opinion.
Summary judgment may not be granted if there is a triable issue of fact and in determining whether there is the evidence presented must be viewed in the light most favorable to the party moved against (Siegel, NY Prac, § 281, p 338). On that basis, there is ample proof, when measured against the obligations of the municipal defendants under statute and regulation, and of defendant Little Flower, under statute, regulation and contract of which plaintiff was the third-party beneficiary, to require denial of defendants’ motions.
As we have made clear in Tucker v Toia (43 NY2d 1) and Matter of Lee v Smith (43 NY2d 453), section 1 of article XVII of the State Constitution imposes upon the State an affirmative duty to aid the needy, which clothes the Legislature with discretion to determine the means by which aid is to be provided, but “unequivocally prevents the Legislature from simply refusing to aid those whom it has classified as needy” (Tucker v Toia, 43 NY2d, at p 8, supra). What distinguishes this case from the Hoffman and Donohue cases is that we deal here with whether the agencies chosen to carry out the State’s obligation to a needy foster child have carried out the duties imposed upon them by the Legislature and the governmental agencies acting under its aegis, not with whether the educational institution itself followed its separate, though incidentally related, obligations. And what distinguishes the obligation of defendants in this case from those of natural parents and other persons in parental relation to a child is that, although section 3212 (subd 2, par b) of the Education Law imposes upon both the duty to “cause such individual to attend upon instruction”, the Social Services Law imposes upon defendants obligations not imposed upon natural parents by that or any other statute, or (if, for purposes of argument we accept a broad view of the parental immunity *131 declared in Holodook v Spencer, 36 NY2d 35)[2] by common law. The overly simplistic view of Special Term, apparently accepted by the Appellate Division, that defendants had discharged their full obligation to Frank Torres by causing him to attend the public school maintained by the City Board of Education on Little Flowers’ premises fails to consider the pertinent constitutional, statutory, regulatory and contractual provisions.
Section 398 of the Social Services Law provides that the city’s public welfare officers “shall have powers and perform duties” including with respect to defective children to “[o]btain admission to state or other suitable schools, hospitals, other institutions *** in accordance with the provisions of the mental hygiene law, education law and acts relating to the family court” (subd 4, par [a]) and with respect to all children within their care to “[plrovide for expert mental and physical examination of any child whom he [sic] has reason to suspect of mental or physical defect or disease” (subd 6, par [b]) and to “provide suitable vocational training” (subd 6, par [k]).
Section 395 of the Social Services Law permits the public official charged with those duties to administer them either directly or through an authorized agency, but the institution in which a child is placed must be conducted in accordance with applicable regulations and the placement is to be supervised by the public official (Social Services Law, § 398, subd 6, par [g]). As the supervision requirement indicates, administration through an agency or institution such as Little Flower does not relieve the public official of his or her statutory obligations. Those obligations are nondelegable (Bartels v County of Westchester, 76 AD2d 517, 523) as was indeed recognized in the preamble to section VII and in section X (par A) of the contract between the city and Little Flower.
The regulations adopted pursuant to that authority required not only that children in the care of the institution receive suitable education as required by law (18 NYCRR 5.19 [in effect at times pertinent to this case], now 18 NYCRR 441.13) but also that a plan of service be developed for such child (18 NYCRR 5.22, now 18 NYCRR 441.14 [b]) and that psychiatric and psychological services, including tests and examinations, be made available to children under care of the institution (18 NYCRR 5.20 [b], now 18 NYCRR 441.15). Moreover, as to the plan of service, the State Board’s Commentary to section 5.22 not only required a preliminary plan on intake which was to *132 include “proper placement in school” and “special services needed, e.g., remedial reading, speech therapy”, but also required that the plan of service “be subject to constant evaluation and formally reviewed annually,” and the Commentary to section 5.20 (b) recommended appropriate use of psychological services, including direction of a remedial program.
Little Flower does not dispute that it is an authorized agency governed by the above provision and that its contract with the municipal defendants required it to arrange, “as needed, religious training, education and vocational training.” Its argument that its obligation is limited solely to such arrangement overlooks the facts that (1) the quoted words simply define the “Basic Care” to be provided under the contract, (2) the contract required it to provide foster care services, (3) under section III of the contract it agreed to provide those services “in accordance with the Social Services Law, Rules of the State Board of Social Welfare, the Regulations of the New York State Department of Social Services, the Inter-Agency Manual and the policies and procedures of the Department” and (4) section VII of the contract required that it provide an initial service plan within 60 days of the placement of a child, submit a semiannual review at the end of six months and obtain reauthorization of the placement annually.
As one of the foster care children for whose benefit the contract with Little Flower was made, Frank Torres would be entitled, as a third-party beneficiary, to recover for its breach (see Seaver v Ransom, 224 NY 233).[3] And as Snow v State of New York (supra), makes clear, the negligent failure of defendants, including Little Flower, to carry out the obligations imposed by statute or regulation may give rise to liability (see, also, Doe v New York City Dept. of Social Servs., 649 F2d 134, on second app 709 F2d 782, cert den _ US _, 104 S Ct 195).
Considered in light of the foregoing, the record, without question, presents triable issues of fact. The claim simply is that the defendants were aware of Frank Torres’ language problem but did nothing at all to remedy it. Thus it was known to defendants when he entered Little Flower that he spoke only Spanish, and an entry in his case record made a year later noted that, “Because of a language problem, communication with Frank has been minimal. He does not appear to understand the drift of a question and his answers are confused arid inappropriate.” Yet no steps were taken by defendants to assist him in overcoming *133 his language problem. The Learning Diagnostic Center later noted that Frank’s “early attempts to learn to read and write were therefore surrounded by anxiety and confusion, due to his struggle with English.” Instead, based on tests administered in English, he was placed in classes for the retarded, and this despite the fact that his achievements in mathematics were inconsistent with retardation. Then when finally referred to a reading specialist, who recommended specific steps to remedy plaintiff’s reading problem, nothing was done during the ensuing four years that plaintiff remained in defendant’s custody. And of all this the city defendants received regular reports.
Donald Snow was misdiagnosed as retarded and will recover $1,500,000 because Willowbrook’s care included medical and psychiatric services and its failure can be labeled medical, rather than educational, malpractice. Yet Frank Torres, also misdiagnosed as retarded by those who had charge of his custody and were obligated to obtain for him instruction, including the ability to read and write in English, necessary reasonably to prepare him for later life, receives nothing because the issue is said to involve educational policy. If a label is necessary, defendants’ failures can properly be designated custodial malpractice. But in truth what is here involved, so the trier of fact could find, is a simple failure to carry out obligations imposed by Constitution, statute, regulation and contract, which has resulted in plaintiff’s illiteracy, but is wholly distinct from matters of educational policy.
Judges Jasen, Jones and Simons concur with Judge Kaye; Judge Meyer dissents and votes to reverse in a separate opinion in which Chief Judge Cooke and Judge Wachtler concur.
Order affirmed, with costs.

. For convenience, hereafter referred to collectively as the city.

. See Bartels v County of Westchester (76 AD2d 517, 522) and Andrews v County of Otsego (112 Misc 2d 37, 44).

. How damages for the breach would be calculated need not be considered on this motion for summary judgment (CPLR 3212, subd [b]).