**STATE BANK OF INDIA, Plaintiff,**

v.

**WALTER E. HELLER & COMPANY, INC., Defendant.**

No. 82 Civ. 7404 (SWK).

United States District Court, S.D. New York.

March 6, 1987.

Dunn & Zuckerman, P.C. by Stuart M. Fischman, Andrew H. Lupu, New York City, for plaintiff.

Hahn & Hessen by Gabriel B. Schwartz, T. Gorman Reilly, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Subject matter jurisdiction in this case is founded on diversity of citizenship under 28 U.S.C. § 1332. Plaintiff alleges breach of contract and gross negligence in a collection factoring agreement. The case is presently before the Court on defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is GRANTED.

## THE MOTION FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) of the Federal Rules of Civil Procedure provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Defendant Walter E. Heller & Company ("Heller") has relied solely on the pleadings in making its motion. On the other hand, plaintiff State Bank of India ("SBI") has responded with an affidavit and exhibits which contain "matters outside the pleadings." The Court has no intention of turning this matter into a motion for summary judgment. It has long been the rule that when a contract is clear in and of itself, circumstances extrinsic to the document may not be considered and that where the intentions of the parties may be gathered from the four corners of the instrument,

issues of contract interpretation are questions of law. *Bethlehem Steel Co. v. Turner Construction Co.,* 2 N.Y.2d 456, 460, 141 N.E.2d 590, 593, 161 N.Y.S.2d 90, 93 (1957). As a result, such issues are properly disposed of through a motion for judgment on the pleadings. *See* 5 Wright & Miller, *Federal Practice and Procedure* § 1368 (1969) ("The importance of th[e] policy [in favor of ensuring to each litigant a full and fair hearing on the merits of his claim or defense] has made federal judges unwilling to grant a motion under Rule 12(c) unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."). While it is within the Court's discretion to allow additional materials, here the Court concludes that the materials offered in no way assist SBI's opposition to the defense motion. Accordingly, defendant's motion to dismiss shall be considered on the pleadings. *See Brooks v. American Export Industries,* 68 F.R.D. 506, 509–10 (S.D.N.Y.1975).

## FACTS

For the purposes of a Rule 12(c) motion, the Court must admit as true the well pleaded material facts alleged in the complaint. *Gumer v. Shearson, Hammill & Co., Inc.,* 516 F.2d 283, 286 (2d Cir.1974); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith,* 495 F.2d 228, 231 (2d Cir.1974). *See* 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.15 (2d ed. 1984). The complaint incorporates the contracts sued upon, and the Court can consider them. Fed.R.Civ.P. 10(c); 5 Wright & Miller, *Federal Practice and Procedure* § 1327, n. 18 (1969).

### The Parties

SBI is an Indian banking corporation which is licensed by the New York Superintendent of Banks to maintain a branch office in New York City. Heller is a commercial factor also located in New York City.

In 1981, following negotiations among SBI, Heller and Sharex International, Inc. ("Sharex"), a New York corporation that manufactured and sold apparel, two written agreements were executed, a factoring agreement between Heller and Sharex, under which Heller agreed to purchase Sharex's accounts receivable, and an assignment by Sharex to SBI of all amounts to be paid by Heller for the purchase of such accounts.

### The Agreements

The factoring agreement, which is governed by New York law, is in the form of a written proposal from Heller to Sharex, dated March 31, 1981, and accepted by Sharex on the same date. It provides in relevant part:

We [Heller] propose to you [Sharex] the following terms and conditions on which we will act as your sole Factor for financing your merchandise sales. You are to assign to us in absolute ownership all your sales accounts. Sales and deliveries of merchandise on credit terms shall be made only with written approval of our Credit Department as to the terms and credit of purchasers, and we shall have the right to withdraw approval at any time before delivery.

On all those sales accounts thus approved and assigned to us, we assume any loss thereon by reason of the insolvency of the customer, and we agree to purchase such sales accounts from you for the face amount thereof, on longest or shortest selling terms, at our option, less credits and factoring commissions and charges set forth below; such purchase price to be due and payable upon the earlier of a) receipt by us of payment of such sales accounts by your customers at our office in New York, New York or b) 120 days after maturity of any sales account if such sales account is not paid for the sole reason that your customer is financially unable to make such payment provided there are no merchandise or delivery disputes or any claims asserted by such customers.

All sums due you pursuant to this Agreement shall be remitted to you and we shall remit all payments received by us during any business week which are due to you on the Wednesday immediately following such business week but if any

such Wednesday falls on a legal holiday, on the next business day thereafter. As to those of your sales accounts which our Credit Department declines to approve but on which, nevertheless, shipment of merchandise has been made, it is understood and agreed that all such sales accounts which are assigned to us and acceptable to us, are to be purchased and paid for by us on the same terms, conditions and commissions as provided herein in respect of approved sales, except only that you assume the credit risk thereon. If any such sales account for any reason is not paid to us in full when due, you agree to repurchase immediately such delinquent account from us at our request for an amount equal to the face value thereof, less payments, if any, collected by us thereon, plus actual expenses up to date of such repurchase incurred by us in attempting to collect or realize on such delinquent account; or, at our option, we may charge your account therewith. We will render you a monthly statement of your account with us and we may consider said statement as correct and so accepted by you unless we receive notice from you to the contrary within thirty days after statements are rendered to you.

For our services in making credit investigations, supervising the ledgering and collection of your sales accounts and assuming the credit risk on approved sales, we will charge you a commission as set forth below on all sales, same to be due at the time sales are invoiced.

One (1%) percent of all sales accounts assigned to us, but not less than $40,-000.00 (the "Minimum Annual Commission") per contract year, as defined below. (See paragraph 1 of annexed Rider.)

Any amounts owing by you to us resulting from our guaranties of your credit, or for commissions, interest, etc., may at our option at any time be considered as advances against your sales accounts and chargeable to you. (See Paragraph 2 of annexed Rider.)

You hereby grant us a continuing security interest in all of your now owned and hereafter acquired accounts receivable, together with all instruments, notes, claims, choses in action and other types of obligations arising therefrom ("Accounts"), the merchandise which is the subject of such Accounts, contract rights, general intangibles and any and all present and future credit balances and reserves held by us or any of our subsidiary or affiliated corporations for your account, any and all of your other property that is now or hereafter in our possession or control, the proceeds and products of all of the foregoing, and your books and records pertaining to the foregoing, as collateral for the payment of any indebtedness, obligation or liability, absolute or contingent, direct or indirect, now or hereafter owing from you to us, including, but not limited to, obligations under this agreement and all amounts which become owing by you to us by reason of any obligation you may have, regardless of whether by agreement or by operation of law, to indemnify us for amounts paid by us to others while we are acting as your guarantor or surety or otherwise. (See Paragraph 2 of annexed Rider)

In the event of any default hereunder, we shall have all the rights of a secured party under the Uniform Commercial Code with respect to such security interest including but not limited to taking possession of any merchandise in which we have a security interest and disposing of same upon five days notice at public or private sale, and you shall be liable for any deficiency. Recourse to any of the foregoing collateral shall not at any time be required and we are authorized to charge your account the amounts of any and all of the above obligations. All accounts charged back to you for any reason shall be retained by us as further security and we will credit you only with the amounts collected thereon. You agree to join with us in executing one or more financing statements and any other document, in form and substance satisfactory to us, necessary to perfect and maintain a first and valid title and securi-

ty interest in our favor in all your Accounts and the collateral referred to above.

You warrant and agree that all Accounts are and shall be free and clear of all liens except for our security interest therein and that you shall not sell, transfer or assign any Accounts nor grant a security interest therein other than to us.

You are to furnish us with original and two duplicate invoices of all sales, and also evidence of shipments.

All invoices and bills to customers shall bear a printed endorsement that the Account has been assigned and is payable only to Walter E. Heller & Company, Inc. and such invoices and billings by whomsoever done shall operate as such assignment to us. Our title to the Accounts shall be confirmed by daily schedules of assignments thereof executed by you in form satisfactory to us. All outstanding accounts assigned to us and all unaccepted, rejected or returned merchandise shall be our property and we alone are to have and enjoy the right to collect and receive the Accounts and the rights and remedies of the seller in the goods. All customer disputes and claims as to the Accounts or the merchandise, and all returns or rejections of merchandise, must be reported to us promptly, and any merchandise received back or repossessed must be set aside and marked as our property.

Our assumption of credit risk, of course, covers only losses on approved sales due to the customer's insolvency or financial inability to pay, provided the merchandise has been received and accepted by the customer without return and without dispute or claim as to price, terms, quality, material, workmanship, quantity or delivery of merchandise, or any other kind of dispute or claim. If an unadjusted claim or dispute delays the payment of an Account when due, our assumption of all the credit risk thereon is cancelled and the amount thereof, together with actual expenses, if any, incurred in attempting to collect such account, may be charged back to you as of the date the Account was originally credited to you.

No allowances, credits or adjustments in respect of disputed Accounts are to be made by you except with our prior express approval in each case, the amount thereof to be charged to your account.

Exchange on checks and other bank charges and all taxes and governmental charges imposed, paid, or payable in respect to sales or merchandise, shall be charged to and paid by you.

We shall not in any way be liable to anybody for refusing to approve terms, credits or deliveries on any sale or for exercising our rights or privileges as set forth herein.

None of our rights hereunder are to be deemed waived by failure or delay to exercise same.

This proposal is unsigned and shall constitute an agreement between us only when received back at our office in New York, New York with your written acceptance endorsed at the foot thereof and when executed by us, and thereupon it shall be governed by the laws of New York. This agreement shall continue until terminated by either party as to future transactions by written notice given by registered mail or telegram to the other party sixty days prior to the termination date: provided, however, that this agreement shall not be terminated by you so long as you are indebted or obligated to us in connection with any other financing arrangements you may have with us, nor shall any such termination affect any security interests, assignments, rights, or obligations arising out of transactions hereunder having their inception prior to such termination.

Should either of us be in default hereunder, or in default under any other agreement or note between us, or in default under the terms of any Schedule of Assignment of Receivables, or should you or any guarantor of your obligations hereunder become insolvent, or fail to meet its debts as they mature, or commit an act of bankruptcy, this Agreement will be terminable by the other party at any time with respect to future transactions.

A contemporaneous rider expands on the terms of Heller's commission. Subsequently, the factoring agreement was amended. The amendment is in the form of an undated, written proposal from Heller to Sharex, accepted by Sharex and consented to by SBI. The amendment changes the interest terms for payment.

The assignment from Sharex to SBI, which also is governed by New York law, was executed by Sharex on the same date as the factoring agreement and provides that Sharex irrevocably sells, assigns and transfers to SBI all of its rights in and under its factoring agreement with Heller.

At the foot of the assignment, Heller subscribed the following:

RECEIPT is hereby acknowledged of the original of this assignment and we hereby agree to honor same. It is agreed that subject to the terms of the Factoring Contract, as amended, the undersigned shall transmit all amounts due under said factoring agreement to the Bank for deposit in the company's bank account.

### The Transactions

Between March 31, 1981 and November 25, 1981, SBI made loans of $900,000 to Sharex. SBI expected that its loans would be repaid from amounts to be received from Heller under the assignment. Some of the purported accounts sold by Sharex to Heller under the factoring agreement proved, however, to be fictitious. Sharex had neither sold nor delivered merchandise to a number of the customers it billed, and these customers were therefore not obligated to pay their invoices. Although Heller had approved the credit of many of these customers, it was not required under the factoring agreement to pay Sharex for such fictitious accounts receivable. As a result, SBI sustained losses on its loans to Sharex.

### The Complaint

SBI seeks to hold Heller answerable for the nonrepayment of its outstanding loans to Sharex. The complaint sets forth two causes of action.

The first cause of action attributes SBI's losses to Heller's breaches of the factoring agreement. SBI asserts (a) that under the factoring agreement, which was assigned to SBI by Sharex, Heller was obliged to verify the validity of sales made by Sharex to its customers; (b) that Heller failed to do so; and (c) that this breach of contract caused SBI's losses.

The second cause of action attributes SBI's losses to Heller's gross negligence in handling the Sharex account. SBI asserts (a) that Heller, as an expert in factoring, owed SBI a duty to administer Sharex's factoring account with reasonable and professional care; (b) that Heller's failure to obtain proof of the actual shipment of goods to Sharex's customers was grossly negligent; (c) that Heller's approval of various Sharex sales transactions was recklessly and wantonly made and without knowledge of the true facts; and (d) that Heller's gross negligence caused SBI's losses.

### DISCUSSION

In considering defendant's Rule 12(c) motion, this Court must accept as true all of the well pleaded allegations of the complaint and must assume all contravening assertions in defendant's answer to be false. *Morris Electronics of Syracuse, Inc. v. Mattel, Inc.*, 595 F.Supp. 56, 58 (N.D.N.Y.1984) (citing *National Metropolitan Bank v. United States*, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383 (1945)). The Court may not dismiss the action unless the Court is convinced that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985) (citing *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The facts presented in the pleadings and the inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party—here, the plaintiff—to insure that the rights of the nonmoving party are decided as fully and fairly on a Rule 12(c)

motion as if there had been a trial. 5 Wright & Miller, *Federal Practice and Procedure*, § 1363 (1969).

Heller seeks dismissal of the complaint on the ground that, as a matter of law, it fails to state a claim entitling SBI to relief. As to the contract claim, Heller argues (1) that neither the factoring agreement nor the assignment imposed on Heller a duty to prevent Sharex's fraud, (2) that plaintiff's allegations are belied by the documents sued on, and (3) that as a matter of law the complaint fails to state a claim entitling SBI to relief. As to the negligence claim, Heller asserts that the facts alleged in the complaint do not establish the breach of any duty owed to SBI and, as a result, dismissal of the complaint is required by law.

SBI, on the other hand, argues that (1) the question of whether Heller was negligent is essentially one of fact, and, except in exceptional cases, the issue may only be decided on a trial; (2) because SBI was in privity with Heller and Sharex, Heller owed SBI a duty to inform and SBI may recover in gross negligence; (3) SBI may be included in the group vested with particular rights by virtue of limited size and foreseeable reliance and may maintain this action as a result; (4) Heller owed SBI a duty as a third party beneficiary of the contract; and (5) Heller's failure to notify SBI of the dangers involved acts as an equitable estoppel of Heller's defenses. The Court does not address those of SBI's assertions which go beyond the allegations of the complaint.

*The Contract Claim*

■ Sharex assigned all of its rights in and under the factoring agreement to SBI. An assignee "is subject to all the equities and burdens which attach to the property assigned because he receives no more and can do no more than his assignor." *International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 126, 325 N.E.2d 137, 139, 365 N.Y.S.2d 808, 811 (1975) (citations omitted). The Second Circuit explained the assignment process as follows:

An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged. Insofar as the assignment touches on the obligations of the other party to the underlying contract, the assignee simply moves into the shoes of the assignor.

*Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 269 (2d Cir.1983) (citations omitted). SBI's rights, therefore, are subject to the terms of the factoring agreement, and SBI obtained no greater rights than those set forth in the factoring agreement. *See Brown Bros. Electrical Contractors, Inc. v. Beam Construction Corp.*, 41 N.Y.2d 397, 399, 361 N.E.2d 999, 1002–03, 393 N.Y. S.2d 350, 351–52 (1977).

■ The factoring agreement obligates Heller to make payment to Sharex for uncollected invoices, only when "there are no merchandise or delivery disputes or any claims asserted by [Sharex's] customers."

Heller's assumption of credit risk, of course, covers only losses on approved sales due to the customers' insolvency or financial inability to pay, provided the merchandise has been received and accepted by the customer without return and without dispute or claim as to price, terms, quality, material, workmanship, quantity or delivery of merchandise, or any other kind of dispute or claim."

As a result, Heller had no obligation to pay either Sharex or SBI for fictitious sales accounts. Furthermore, it was Sharex's responsibility to document the validity of all such accounts by "furnish[ing Heller] with original and two duplicate invoices of all sales, and also evidence of shipments."

SBI claims that (1) under the terms of the factoring agreement Heller was obligated "to make credit investigations, supervise ledgering of all sales and collections, and collect all sales accounts," "to verify ... the validity of sales made by Sharex to its customers," and "to obtain evidence of the shipment of merchandise by Sharex to its customers," (2) Heller failed to do so, and (3) this constituted a breach of the factoring agreement. The terms of the

factoring agreement, however, are plain and unambiguous. Heller simply was not so obligated.

In *Exportos Apparel Group, Ltd. v. Chemical Bank*, the court determined that:

> The provisions of the factoring agreements in suit are perfectly clear. Their manner of operation is well established. A factor purchases the accounts receivable from its client ... entirely without recourse to the client by the factor if the client's customer ultimately proves unable to pay. The factor is, in practical effect, an insurer of the customer's solvency. The factor conducts an inquiry into the credit of the proposed customer in order to decide whether or not to accept that one hundred percent risk of the latter's solvency. The credit check conducted by the factor is solely for its own benefit; the factor is not undertaking, explicitly or by fair implication, to benefit its client in the conduct of the latter's business affairs; and in the absence of such duty or undertaking, the client ... can derive no legal rights or benefits from what the factor does or does not do.

*Exportos Apparel Group, Ltd. v. Chemical Bank*, 593 F.Supp. 1253, 1256 (S.D.N.Y. 1984) (citations omitted).

Because Heller had no contractual duty to benefit its client Sharex in the conduct of his duty, Heller also had no such duty to SBI, Sharex's assignee. Accordingly, there is no set of facts in support of its claim which would entitle SBI to relief, and, as a matter of law, SBI's first claim must be dismissed.

### The Gross Negligence Claim

In order to state a claim for negligence, the plaintiff must allege that the defendant owed the plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff was injured as a proximate result of the breach. *Donohue v. Copiague Union Free School District*, 64 A.D.2d 29, 32, 407 N.Y.S.2d 874, 877 (2d Dept.1978), *aff'd*, 47 N.Y.2d 440, 391 N.E.2d 1352, 418 N.Y.S.2d 375 (1979). *See Sawyer v. United States*, 297 F.Supp. 324, 338 (E.D.N.Y.1969), *aff'd*, 436 F.2d 640 (2d Cir.1971). A defendant who is under no duty to a plaintiff cannot be liable to that plaintiff, even if negligent. *Livingston v. Gribetz*, 549 F.Supp. 238, 242 (S.D.N.Y. 1982).

SBI's second claim asserts that SBI relied on Heller's customer credit approvals because Heller held itself out as an expert in factoring and therefore owed SBI a duty of care and that because Heller was grossly negligent in handling the Sharex account, SBI was harmed. SBI's legal conclusion that Heller owed SBI a duty of care, however, is wrong. The *Exportos* case was based on theories of both contract and negligence.

> What remains is Exportos's allegations that Chemical was negligent in conducting its credit analysis of Fashion House, and that Exportos suffered economic loss as a consequence of that negligence. Neither party cites case law upholding or rejecting such a theory within the context of a factoring agreement. I am told the question is one of first impression. As far as the Court's research reveals, counsel are correct; but the question, in my judgment, is of no particular difficulty. This negligence claim fails because there was no duty extending from Chemical to Exportos upon which the latter was entitled to rely.
>
> \* \* \* \* \* \*
>
> Under cases such as [*Danleigh Fabrics, Inc. v. Gaynor-Stafford Industries, Inc.*, 62 N.Y.2d 677, 476 N.Y.S.2d 287, 464 N.E.2d 985 (1984)], the factor's ability to charge back from its client the value of invoices uncollected because of commercial disputes is absolute. The theory of negligence for which the present plaintiff cites no authority would undermine that settled rule of law, and do unacceptable violence to that precise and well-established allocation of risk which makes factoring a useful facilitator of commerce.

*Exportos Apparel Group, Ltd. v. Chemical Bank*, 593 F.Supp. at 1256–57.

As a result, SBI's negligence claim also must be dismissed, as a matter of law.

## CONCLUSIONS

SBI's claims are dismissed on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. However, this Court cannot say that, given leave to amend its complaint, SBI could not allege facts sufficient to withstand Heller's motion for judgment on the pleadings. *Gumer v. Shearson, Hammill & Co., Inc.*, 516 F.2d 283 (2d Cir.1974). Since Rule 15 dictates that "leave to amend shall be freely given when justice so demands," Fed.R. Civ.P. 15(a), plaintiff is granted leave to amend its complaint, if it can, to provide a cognizable claim against SBI, Fed.R.Civ.P. 11; *Starmakers Publishing Corp. v. Acme Fast Freight, Inc.*, 615 F.Supp. 787, 792 (S.D.N.Y.1985).

SO ORDERED.