OPINION OF THE COURT
Peter P. Cusick, J.
Before the court is a motion (calendar No. 3649) by the defendants, City of New York and the Board of Education of the City of New York, for an order dismissing this action against them on the ground that it fails to state a cause of action, pursuant to CPLR 3211 (a) (7). The individual defendant, Murray Brenner, seeks the same relief (calendar No. 3581).
According to Margaret Helbig, the infant plaintiffs mother, her son Robert Helbig was enrolled in P.S. 5 in Staten Island for the second grade. He had difficulty with his school work, but the District 31 Committee on Special Education (hereinafter the Committee) decided not to place him in a special tutoring program. The infant plaintiff took City-wide reading and mathematics tests later in the second grade, and he attained high scores, i.e., 94% national percentile in reading and 87% national percentile in math. However, his teacher *489 believed his classroom work fell far below his performance levels on these tests.
A similar pattern occurred in the third grade. Plaintiffs City-wide high test scores were difficult to reconcile with his poor classroom work. In the fourth grade, plaintiff again did well in these standardized tests, but still had great learning difficulties. Defendant Brenner, the principal at P.S. 5, consistently refused retesting or admission to remedial programs, also known as the "Resource Room”.
Again in the fifth grade, plaintiffs teacher noted a deterioration in his classroom performance and defendant Brenner finally consented to a retesting. It was found that he was functioning intellectually in the "low average” range with weakness in practical judgment, visual sequences and visual/ spatial reasoning, but was refused admission to a remedial program by the Committee, which determined that he was "academically not scoring low enough to meet entry criteria”. Three months later he again attained high scores in City-wide reading and mathematics tests. The pattern continued for several years, with below average school work, but superior City-wide test scores preventing him from utilizing special education programs.
Some time thereafter, the teacher of the special education class, a Mr. Aidlin, tested the infant plaintiff at his mother’s request, and agreed to place him in his class. When defendant Brenner discovered this, he pulled plaintiff out of Aidlin’s class, and admonished Mrs. Helbig for "going over [his] head”.
After plaintiff graduated P.S. 5, he attended I.S. 34 where he was again tested. His standardized test scores dropped dramatically; he achieved a 29% in reading, 52% in math, 53% in problem solving, and 35% in computation. The poor results in these City-wide tests continued through the eighth grade, and the principal of I.S. 34 noted the plaintiffs very poor comprehension of the English language. His poor performance was attributed in general to inattentiveness and lack of motivation and interest.
The plaintiff entered Tottenville High School in 1991, and after a retesting by the Committee, he was classified as learning disabled for the first time and placed in the appropriate classes and programs. However, he is still failing several classes and has been psychologically evaluated as suffering from isolation, heightened emotions, and anxiety as a result of his experience.
*490 Plaintiffs allege that defendants failed to diagnose Robert’s learning disability and failed to provide him with remedial assistance for that disability.
The defendants do not concede the accuracy or veracity of these statements, but for purposes of this CPLR 3211 (a) (7) motion they shall be presumed to be true (Morone v Morone, 50 NY2d 481).
Had these circumstances been the only ones for the court to consider, the complaint would be dismissed for it alleges a claim of educational malpractice, a cause of action not recognized in this State (Donahue v Copiague Union Free School Dist., 47 NY2d 440; Hoffman v Board of Educ., 49 NY2d 121). As a matter of public policy, the courts are reluctant to "sit in review of the day-to-day implementation of [educational] policies” (Donohue v Copiague Union Free School Dist., supra, at 445). "[C]ourts ought not interfere with the professional judgment of those charged by the Constitution and by statute with the responsibility for the administration of the schools of this State”. (Hoffman v Board of Educ., supra, at 126.) Had the aforementioned circumstances been the only factors involved, plaintiffs would be asking this court to second-guess the educators’ decisions not to place the infant plaintiff into remedial or special education programs. This is clearly impermissible under Donohue, Hoffman, and their progeny.
However, plaintiffs’ complaint also alleges that defendant Brenner intentionally altered plaintiff’s test scores, along with those of other students, for several years during his attendance at P.S. 5. In support, plaintiffs present a letter from Schools Chancellor Fernandez indicating that the Board’s Office of Special Investigations determined that defendant Brenner tampered with P.S. 5’s City-wide test papers by altering the answer sheets over a period of several years.
Thus, plaintiffs allege more than the mere exercise of poor professional judgment by defendants; they assert willful, intentional conduct which had the intended result of denying the available benefits of remedial or special education to the infant plaintiff due to falsified test scores.
The Court of Appeals has always recognized that there may be situations in which an aggrieved party claims more than the ordinary malpractice in the field of education, and in which the courts ought to intervene and remedy. The reluctance of the courts to sit in review of day-to-day management *491 of school policy " 'is not to say that there may never be gross violations of defined public policy which the courts would be obliged to recognize and correct’ (Donahue v Copiague Union Free School Dist., supra, at 445, quoting Matter of New York City School Bds. Assn. v Board of Educ., 39 NY2d 111, 121; see also, Hoffman v Board of Educ., supra, at 126.) Judge Bernard Meyer, in his dissent in Hoffman (at 127), recognized that affirmative conduct on defendant’s part ought not to constitute "educational malpractice”.
Indeed, the availability of some form of relief in the case of intentional conduct was recognized by the Second Department in Paladino v Adelphi Univ. (89 AD2d 85, 93-94), wherein the Court stated: "Courts have thus far refused to bar actions for intentional tort against educators although most have been dismissed for pleading deficiencies (see, e.g., Donohue v Copiague Union Free School Dist., 64 AD2d 29, 39, affd 47 NY2d 440, supra; Peter W. v San Francisco Unified School Dist., 60 Cal App 3d 814, 827, supra). An action for intentional tort has been held to be viable upon the ground that those persons entrusted with the duty to educate our young should not be shielded from liability for their intentional wrongs (Hunter v Board of Educ., 292 Md 481, —, 439 A2d 582, 586-587, supra). We do not disagree. An action for fraudulent misrepresentation in the educational context bespeaks an abuse of the trust imparted to our educators and should be entertained by the courts. Deception has no place in the educational process. While negligent misrepresentations and judgmental errors ought not be actionable (see Peter W. v San Francisco Unified School Dist., supra, p 827), misrepresentations coupled with the element of scienter should result in the imposition of liability.”
No other cases in this jurisdiction have addressed this narrow issue, i.e., whether intentional conduct is shielded from the public policy enunciated in Donohue (supra) and Hoffman (supra), denying recovery for alleged educational malpractice. However, in Hunter v Board of Educ. (292 Md 481, 439 A2d 582, supra), the Court of Appeals of Maryland addressed a claim that the defendant educators, "acting intentionally and maliciously, furnished false information to them concerning the student’s learning disability, altered school records to cover up their actions, and demeaned the child.” (Supra, 292 Md, at 483.) The Hunter court made it clear that in declining to entertain generic educational malpractice claims, it does not intend to shield educators from their *492 intentional torts. It determined, quite properly, that "where an individual engaged in the educational process is shown to have wilfully and maliciously injured a child entrusted to his educational care, such outrageous conduct greatly outweighs any public policy considerations which would otherwise preclude liability so as to authorize recovery. It may well be true that a claimant will usually face a formidable burden in attempting to produce adequate evidence to establish the intent requirement of the tort, but that factor alone cannot prevent a plaintiff from instituting the action.” (Supra, 292 Md, at 490-491.)
The California First District Court of Appeals, while dismissing a claim for an inadequate education in Peter W. v San Francisco Unified School Dist. (60 Cal App 3d 814, 131 Cal Rptr 854), also addressed a second cause of action sounding in intentional misrepresentation. This claim asserted that the defendant educators "falsely and fraudulently” represented that the child was performing at or near his proper grade level, and knew that these statements were false when made. This cause of action was ultimately dismissed, but purely on inadequate pleading grounds; the complaint failed to allege facts showing reliance, a necessary element of the tort of misrepresentation. At bar, plaintiff clearly alleged, at paragraph 28, that she relied upon the information concerning the test results provided to her. The court in Peter W acknowledged the possibility of stating a cause of action for intentional misrepresentation, if properly pleaded.*
Defendants have categorized this action as a claim for impermissible educational malpractice, but plaintiffs have consistently prosecuted it on the basis of the alleged intentional conduct on Brenner’s part. Plaintiffs do not rely on a theory that defendants failed to properly educate the student as a result of an incorrect assessment of the student’s intellectual capacity (see, Savino v Board of Educ., 123 AD2d 314, 315 *493 [2d Dept]). Thus, it is not a claim of educational malpractice (supra) barred by Donohue (supra) and Hoffman (supra).
Defendants take the further position that plaintiffs’ exclusive remedy was an administrative appeal of their decision not to place plaintiff in the resource room, pursuant to Education Law § 310 (7). They rely on Donohue (supra) and Hoffman (supra) for this proposition, but this reliance is misplaced, for the Court of Appeals in each case suggested that the administrative process was best suited for disputes concerning the proper placement of a child in a particular educational program, i.e., in educational malpractice situations. As set forth hereinabove, this is not such a claim.
In any event, it has been determined that the review procedure set forth in Education Law § 310 is not the exclusive remedy to review acts of school officials (Matter of Jacobson v Board of Educ., 177 Misc 809, 812, mod on other grounds 265 App Div 837, lv denied 265 App Div 935; Cassel v Board of Educ., 220 NYS2d 262; Matter of Coughlan v Cowan, 21 Misc 2d 667). One older case reasoned that it is the exclusive remedy only in cases where the decision of the school officials involves the exercise of discretion in matters clearly within their jurisdiction (Matter of McCarthy v Board of Educ., 106 Misc 193), but it cannot be gainsaid that purposefully altering test scores was within the discretion of any of the defendants. In fact, the wording of Education Law § 310 (7) permits, but does not mandate, an appeal by petition "in consequence of any action * * * [b]y any other official act or decision of any officer, school authorities,” etc. (emphasis added). Again, it stretches credibility to argue that the altering of test scores is an official act or decision.
Accordingly, the motion (calendar No. 3649) and cross motion (calendar No. 3581) to dismiss this action are denied, except to the extent that the complaint is dismissed as to the City of New York only. Contrary to plaintiffs contention, the Board of Education is not an agency of the City of New York. They are separate entities. (Gold v City of New York, 80 AD2d 138, 140.)

 In a recent Arkansas case not involving educational malpractice, but rather in a suit against a school district for failing to follow regulations over the removal of asbestos in the school, it was held that defendants were not immune from the intentional acts of school districts and their employees, only their negligent acts. By alleging that defendants knowingly concealed a dangerous asbestos condition despite knowledge of the proper procedures under State and Federal law, plaintiffs stated a cognizable cause of action for the intentional infliction of emotional distress. (Deitsch v Tillery, 309 Ark 401, 403, 833 SW2d 760.) This case emphasizes the growing distinction developing in the case law between causes of action founded upon negligence and those founded upon some intentional tort.