Melissa Annette BRANTLEY, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 93–CV–19.

District of Columbia Court of Appeals.

Argued Feb. 16, 1994.

Decided April 7, 1994.

See also, 15 F.3d 1159.

Ronald L. Drake, Washington, DC, for appellant.

Charles L. Reischel, Deputy Corp. Counsel, with whom John Payton, Corp. Counsel, and Michael A. Conley, Sp. Asst. Corp. Counsel, Washington, DC, were on the brief, for appellee.

Before STEADMAN, SCHWELB, and SULLIVAN, Associate Judges.

SCHWELB, Associate Judge:

Melissa Annette Brantley, now fourteen years of age, is a learning-disabled student in the District's public school system. In the suit which is the subject of this appeal, Melissa's mother sought monetary damages on her behalf from the District, claiming that public school officials neglected to evaluate Melissa's learning disabilities in proper and timely fashion, as required by applicable regulations, and that they consequently failed to place her promptly in an appropriate school setting. The complaint also alleges that school authorities lost Melissa's records, and that they deliberately post-dated a document in order to cover up their failure to comply

with a regulation requiring prompt referral for evaluation. It is alleged that Melissa "was deprived of a publicly supported education suited to her needs," that she "suffered shame, embarrassment, humiliation, severe mental anguish and severe emotional distress," and that she "was deprived of two productive years of her life." Characterizing the action as one based on alleged "educational malpractice," the trial judge dismissed the complaint for failure to state a claim upon which relief may be granted.

If the allegations of the complaint are true, then the neglect of Melissa's needs was truly shameful. Nevertheless, we are constrained to agree with the trial judge, and with the virtually unanimous authorities from other jurisdictions upon which the judge relied, that an action for damages will not lie to compensate Melissa for her claimed injuries. Accordingly, we affirm.

## I.

According to the allegations of the complaint, which must be accepted as true for the purpose of the District's motion to dismiss, *see Gray v. Citizens Bank of Washington*, 602 A.2d 1096 (D.C.1992), Melissa was enrolled in the second grade at Cleveland Elementary School during the 1987–88 school year. She attended summer school and was retained in the second grade at the conclusion of the summer, and again at the conclusion of the 1988–89 school year. At the beginning of the 1989–90 school year, she was enrolled in the second grade for the third time, now at Bruce–Monroe Elementary School.

The complaint alleges that Melissa's academic records were lost or misplaced by District of Columbia Public Schools (DCPS) officials, apparently in connection with her transfer, and that these records were not forwarded to Bruce–Monroe. Consequently, according to Melissa, personnel at Bruce–Monroe were unaware that she had already been retained in the second grade for two consecutive years. In spite of the provisions of 5 DCMR § 2201.6 (1993), which required school authorities to refer her for assessment and evaluation as soon as it became apparent that she might not be promoted after the first semester of the 1988–89 school year,[1] Melissa was not so referred until 1990, and then only after Melissa's mother and her attorney intervened.

On February 15, 1990, Melissa's mother signed documents requesting that her daughter, who had now been in the second grade for two and a half years, be referred for assessment and evaluation. Under the time frame set forth in the order of the United States District Court in *Mills v. District of Columbia Bd. of Educ.*, 348 F.Supp. 866, 878 (D:D.C.1972), which has been incorporated in pertinent part into the applicable regulations, *see* 5 DCMR § 3010.1 (1993), DCPS officials were obliged to complete an evaluation of Melissa within twenty days after February 15, 1990, and to effect an appropriate placement within thirty days of that date. The complaint alleges that DCPS did not comply with these requirements. Instead, in order to conceal their noncompliance, DCPS employees post-dated the February 15 documents to make it appear that they had been executed on March 26, 1990.[2]

On June 25, 1990, more than 130 days after Melissa's mother had signed the required documents, DCPS proposed a special education placement in one of its public schools. Melissa's mother and counsel objected, and the complaint was referred for an administrative hearing. On August 1, 1990, at the beginning of that hearing, DCPS agreed to place Melissa at the Lab School of Washington, a private school for children with learn-

---

1. 5 DCMR § 2201.6 provides as follows:
    If a student has not already undergone assessment and evaluation pursuant to the provisions of chapter 30, the student whose progress at the end of the first semester or term indicates that he or she may not be promoted at the end of one (1) year of retention at a particular level shall be referred for assessment and evaluation pursuant to the provisions of chapter 30.

2. The Office of Civil Rights of the United States Department of Education (OCR), which conducted an investigation to determine whether Melissa had been subjected to discrimination on account of her handicap, found in regard to this incident that "the forms were dated several weeks after [Melissa's] parents signed them, thus creating a misleading impression regarding the timeliness of the transaction."

ing disabilities. Melissa's attorney acknowledges that this was an appropriate placement, but seeks monetary damages on Melissa's behalf for the emotional distress and lost earnings allegedly resulting from the District's wrongful conduct.

## II.

■ In her complaint, as we have seen, Melissa alleges a variety of negligent or otherwise wrongful acts on the part of the District, including noncompliance with applicable regulations relating to Melissa's assessment and placement, the failure to forward her academic records to her new school, and the post-dating of documents in order to conceal noncompliance by DCPS with its legal obligations. All of these alleged acts and omissions, however, are said to have contributed to, and constitute evidence of, one single alleged wrong, namely, the alleged failure of DCPS to assign Melissa in timely fashion to an appropriate school and to provide her with an education suitable to her needs. The harm of which Melissa complains is that, allegedly as a result of the District's tortious conduct, she was compelled to spend three years in the second grade, and that she was not assigned to an appropriate school until the 1990–91 school year. All of the claimed individual negligent or wrongful acts are alleged to have contributed to the single injury resulting from her allegedly unsuitable assignment.

Under these circumstances, we agree with the trial judge that, regardless of the phrasing of Melissa's pleadings, the gravamen of her complaint is that DCPS officials have engaged in "educational malpractice." The trial judge held, in conformity with the great weight of authority, that no such tort exists, and that conduct of the kind alleged in Melissa's complaint cannot be redressed by a civil suit for damages. We conclude that the judge's decision was correct.

With but a single exception, the courts which have addressed the issue here presented have declined to entertain actions for educational malpractice. *See, e.g., Ross v. Creighton University*, 957 F.2d 410, 414–15 (7th Cir.1992) (applying Illinois law); [3] *Doe v. Board of Educ. of Montgomery County*, 295 Md. 67, 453 A.2d 814, 817–20 (1982); *Hunter v. Board of Educ. of Montgomery County*, 292 Md. 481, 439 A.2d 582, 583–86 (1982); *D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555–57 (Alaska 1981); *Hoffman v. Board of Educ. of the City of New York*, 49 N.Y.2d 121, 424 N.Y.S.2d 376, 400 N.E.2d 317, 319–20 (1979); *Donohue v. Copiague Union Free Sch. Dist.*, 47 N.Y.2d 440, 418 N.Y.S.2d 375, 391 N.E.2d 1352, 1354–55 (1979), *Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal.App.3d 814, 131 Cal.Rptr. 854, 857–61 (1st Dist.1976); Annotation, *Tort Liability of Public Schools and Institutions of Higher Learning for Educational Malpractice*, 1 A.L.R. 4th 1133 (1980 & 1993 Supp.); *but cf. B.M. v. State*, 200 Mont. 58, 649 P.2d 425, 427–28 (1982).[4] Some of these cases have involved allegations of negligent failure to educate a student in basic academic skills. *See, e.g., Ross, Donohue, Peter W.* In others, however, the allegations were similar to those presented here, and included failures properly to test the student or to classify or assign him or her correctly. *See, e.g. Doe, Hoffman, D.S.W.* There is thus overwhelming judicial authority for the proposition that public school authorities' failure to educate students, or to assign them to the correct school or program, does not give rise to a suit for money damages.

In its persuasive opinion in *Ross*, the United States Court of Appeals for the Seventh Circuit identified several reasons articulated by the courts for not entertaining claims of

3. According to the court in *Ross*, claims sounding in educational malpractice have been rejected in at least eleven states. *Id.*, 957 F.2d at 414 n. 2 (collecting cases).

4. In *B.M.*, a plurality of three justices sustained the complaint, a fourth justice concurred in the result, and three justices dissented. With little analysis and with no discussion of precedents from other jurisdictions, the plurality stated that "[w]e have no difficulty in finding a duty of care owed to special education students.... The school authorities owed the child a duty of reasonable care in testing her and placing her in an appropriate special education program." 649 P.2d at 427. The dissenters would have dismissed the complaint on the strength of the authorities from New York and Alaska which are cited in the text of this opinion.

educational malpractice. These reasons have included (1) the lack of a satisfactory standard of care, (2) the "inherent uncertainties" about the cause and nature of damages, (3) the "potential it presents for a flood of litigation against schools," and (4) the threat of "embroil[ing] the courts into overseeing the day-to-day operations of the schools." 957 F.2d at 414 (citations omitted). Assuming, *arguendo*, that it would not be unreasonably difficult to fashion a standard of care with respect to some of the underlying allegations in this case (*e.g.*, the alleged failures to evaluate Melissa in timely fashion and to forward her academic records to her new school),[5] the second, third and fourth considerations articulated in *Ross* apply with full force in the present case.

Melissa relies heavily on the apparent noncompliance by DCPS with its own regulations, which require the timely evaluation of students who are encountering academic difficulties. She contends that these regulations may be enforced by a civil action for damages, but cites no authority for this contention, and we know of none. Even if we were to assume that a new tort, compensable by suit for money damages, could ever be created by a school board regulation—a dubious proposition, the merits of which we defer to another day—there is no evidence that the DCPS regulations on which Melissa relies were intended to create such a right by implication. These regulations provide elaborate procedures authorizing a parent, under circumstances such as those here presented, to challenge a proposed placement, to participate in a formal administrative hearing, and, in appropriate cases, to obtain the requested assessment or assignment to a different school or program. *See* 5 DCMR §§ 3000, *et*

*seq.* (1993). Indeed, Melissa's counsel invoked these very procedures in this case.

The availability of an administrative remedy for violation of these regulations supports our conclusion that no right to enforcement by civil action for damages exists. *See Hunter, supra,* 439 A.2d at 586, *D.S.W., supra,* 628 P.2d at 552; *Donohue, supra,* 418 N.Y.S.2d at 378–379, 391 N.E.2d at 1355. Moreover, "where a statute [or regulation] expressly provides a particular remedy, a court must be chary of reading others into it." *Fountain v. Kelly,* 630 A.2d 684, 690 (D.C.1993) (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979)). "Where, as here, the legislature [or agency] has specified the relief which is appropriate to redress a violation, courts are not authorized to devise different (and in this case far more drastic) remedies; *expressio unius est exclusio alterius.*" *Mack v. United States,* 637 A.2d 430, 433 (D.C.1994) (citations omitted).[6]

Melissa also invokes what Blackstone has described as "a general and indisputable rule, that where there is a legal right, there is also a legal remedy, by suit or action at law, whenever that right is invaded." 3 WILLIAM BLACKSTONE, COMMENTARIES 23 (1783) (quoted in *Franklin v. Gwinnett County Public Schools,* — U.S. —, —, 112 S.Ct. 1028, 1033, 117 L.Ed.2d 208 (1992)); *see also Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803).[7] The concept is a noble one, and we unhesitatingly endorse it. It has no bearing here, however, because judicial recognition of a right—the precondition for inferring a remedy—itself presup-

---

**5.** Even if we make this assumption, the applicable standard of care would be difficult to articulate in relation to Melissa's ultimate claim—that she was assigned to the wrong schools and was not provided with the appropriate instruction.

**6.** Melissa also contends that noncompliance with the DCPS regulations is, at least, evidence of negligence. *See, generally, Rong Yao Zhou v. Jennifer Mall Restaurant Inc.,* 534 A.2d 1268, 1273–74 (D.C.1987). Assuming this to be true, the only "negligence" which one could infer from the breach of these regulations is professional negligence on the part of educators, *i.e.*, educational malpractice. For the reasons ex-

plained in the text, this kind of "negligence" does not give rise to a suit for damages, and the plaintiff must resort to her administrative remedies.

**7.** Chief Justice Marshall wrote for the Court in *Marbury* that our government

has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.

5 U.S. (1 Cranch) at 163.

poses the existence of an enforceable legal duty. Here, no such legal duty exists. As the court explained in *Peter W.*, if courts were to hold public school officials to an actionable duty of care in the discharge of their educational responsibilities, this "would expose them to the tort claims—real or imagined—of disaffected students and parents in countless numbers." *Peter W., supra*, 131 Cal.Rptr. at 861. "[T]o allow [students'] negligence claims to proceed would in effect position the courts of [the District] as overseers of both the day-to-day operation of our educational process [and] the formulation of its governing policies." *Hunter, supra*, 439 A.2d at 585. Since the District has no actionable duty to exercise due care in educating Melissa, Melissa has no legal right for which, in conformity with Blackstone's maxim, she would be entitled to a legal remedy.[8]

### III.

For the foregoing reasons, the judgment appealed from is hereby

*Affirmed.*[9]

---

8. The District does have an obligation, under DCPS regulations, to assess and evaluate in timely fashion students in Melissa's circumstances. The regulations, however, provide an administrative remedy for any failure by DCPS to carry out its duty. This situation does not present us with the kind of wrong without a remedy with which Blackstone was concerned.

9. Melissa also contends that the complaint should not have been dismissed because she has alleged intentional misconduct on the part of school officials. *See Hunter, supra*, 439 A.2d at 586–87. She alludes specifically to the alleged post-dating by DCPS employees of her mother's request for an assessment, this post-dating allegedly having been effected in order to conceal apparent noncompliance with the applicable regulation. We agree with Melissa that such conduct, if it occurred (and OCR found that it did occur), was unconscionable. The alteration of records for the purpose of covering up unlawful conduct is admissible to show consciousness of

guilt, from which guilt itself may be inferred, and an unfavorable inference may operate against "the whole mass of alleged facts constituting [the District's] cause." *See Mills v. United States*, 599 A.2d 775, 783–84 (D.C.1991) (quoting II J. WIGMORE, EVIDENCE, § 278, at 133 (Chadbourn ed. 1979)). In the present case, however, we perceive no reasonable basis for inferring a causal connection between the post-dating and Melissa's claimed injury; it was the delay by DCPS (and not the attempted concealment of the delay) that deferred Melissa's assignment to an appropriate school.

Melissa also seeks to recover damages for negligent infliction of emotional distress. In this regard, her complaint fails to state a claim for which relief may be granted. *See Williams v. Baker*, 572 A.2d 1062, 1067 (D.C.1990) (en banc); *Cauman v. George Washington University*, 630 A.2d 1104, 1106–07 (D.C.1993); *Jones v. Howard University, Inc.*, 589 A.2d 419, 424 (D.C.1991); *Ross, supra*, 957 F.2d at 415.