MOSS REHAB, Moss Rehabilitation Hospital, and Moss Rehab Driving School for the Disabled, Defendants Below, Appellants,

v.

Barbara A. WHITE, Individually and as the Administratrix of the Estate of James T. White, Kathleen White Murphy, Thomas James White, and William H. White, Plaintiffs Below, Appellees.

No. 101,1996.

Supreme Court of Delaware.

Submitted: March 11, 1997.

Decided: April 23, 1997.

Richard D. Abrams of Warren B. Burt & Associates, Wilmington, for appellants.

Richard A. Zappa (argued), and Matthew P. Denn of Young, Conaway, Stargatt & Taylor, Wilmington, for appellees.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court *en Banc*.

HOLLAND, Justice:

This litigation arises from a motor vehicle accident. The plaintiffs-appellees, Barbara A. White, Individually and as the Administratrix of the Estate of James T. White; Kathleen White Murphy; Thomas James White; and William H. White ("Plaintiffs"), commenced a wrongful death action in the Superior Court. The defendants were the appellants, Moss Rehab, Moss Rehabilitation Hospital, and Moss Rehab Driving School for the Disabled (collectively "Moss Rehab"); and other persons, who are not parties to this appeal. After a jury trial, the Plaintiffs were awarded a total of $371,900. Thus far, the Plaintiffs have received $200,000 from the non-appealing defendants.

Moss Rehab raises two issues on appeal. First, Moss Rehab argues that the Superior Court improperly denied their motion for summary judgment. Specifically, Moss Rehab contends that the Plaintiffs failed to state a cause of action under Delaware law. Second, Moss Rehab asserts that the Superior Court erred by denying Moss Rehab's motion for judgment as a matter of law. According to Moss Rehab's arguments, the Plaintiffs failed to meet their burden of proof either in establishing the standard of care or that a breach of that standard was the proximate cause of Plaintiffs' injuries.

This Court has concluded that the Superior Court should have granted Moss Rehab's motion for summary judgment. The Plaintiffs' complaint failed to assert a claim upon which relief could be granted under Delaware law. Accordingly, the judgment against Moss Rehab must be reversed. Consequently, it is unnecessary to address the merits of Moss Rehab's second contention.

### Substantive Facts

Moss Rehab Driving School for the Disabled ("Moss Driving School") provides driver evaluation and training for individuals with physical disabilities. Moss Driving School is authorized to operate in Delaware by the Department of Public Instruction.[1] Moss Driving School receives referrals for driver evaluation and training from individuals, physicians, hospitals, vocational rehabilitation facilities, and workers' compensation facilities.

Moss Driving School conducts a formal assessment to determine whether the disabled applicant is capable of learning to drive a motor vehicle, before the actual training program begins. The assessment consists of visual, perceptual and reaction-time testing, as well as a review of the applicant's medical records. If the applicant has a learner's permit, the assessment also includes a road test. If the applicant's assessment is not satisfactory, Moss Driving School will not accept that person for driver training.

In April 1984, John Matthew Sharp ("Sharp") was fifteen years old. He was in a car accident that left him in a coma for one week. Over the next three years, Sharp received medical treatment for the consequences of a severe closed head trauma. That injury affected many parts of Sharp's brain.

In March 1990, Sharp's mother referred him to the Delaware Division of Vocational Rehabilitation ("DVR") for job training. After successfully completing job training, Sharp obtained employment as a credit au-

---

1. Moss Driving School is also regulated in Pennsylvania by the Department of Education.

thorizer. Meanwhile, DVR referred Sharp to Moss Driving School because having a driver's license would increase his job marketability.[2]

Sharp's training at Moss Driving School began on January 15, 1991. After his initial training lesson, Sharp's instructor noted in his file that Sharp possessed knowledge of some driving skills. Over the course of Sharp's training, his instructor noted several problems in Sharp's file. Those problems included being a "little jerky with the steering wheel," needing to slow down, being a "wise guy," and exhibiting problems when making right-hand turns.[3]

According to Moss Rehab's records, by the time Sharp completed his driver training, his demonstrated problems had been corrected. Sharp's instructor testified at trial that Sharp had been appropriately evaluated and trained to independently operate a motor vehicle. Sharp's instructor also testified that she never had a concern about Sharp's reaction time.

The record reflects that, notwithstanding Sharp's completion of the Moss Driving School's program, Sharp failed the first driver's test administered to him by the Delaware Department of Public Safety, Division of Motor Vehicles. That failure was the result of hitting a cone during the driving test. Sharp passed the Delaware driving test when he took it for a second time on May 7, 1991. The test administered to Sharp was the same test that is given to non-handicapped drivers.

On July 12, 1991, Sharp was driving his automobile in New Castle County. After exiting a highway, he kept his car close to the right-hand side of the exit ramp roadway. In doing so, Sharp's right front tire hit the cement curb. Sharp reacted by steering to the left and collided with a car in the left lane of the exit ramp. Still moving to the left, Sharp reached and merged into the right lane of the highway, where the left rear quarter-panel of his car was struck by the right front fender of a "second car." Sharp's vehicle traveled another 200 feet up the road where he brought the car to a controlled stop.

The collision with Sharp's vehicle forced the second car into the path of a truck. The truck collided with the second car. James T. White ("White"), the passenger of the second car, was fatally injured from the collision with the truck.

### Procedural Facts

Plaintiffs commenced a wrongful death action on May 17, 1993 against Sharp, the driver of the truck, and other defendants. The complaint alleged that the driver defendants had negligently operated their motor vehicles. The complaint asserted that the defendant drivers' negligence was the proximate cause of White's death.

On July 8, 1993, Plaintiffs commenced an additional wrongful death action against Moss Rehab. The complaint alleged, *inter alia*, that Moss Rehab had failed to properly evaluate Sharp and train him to drive a motor vehicle. In November 1993, the Superior Court consolidated the proceedings against the defendants named in the original action and Moss Rehab.

On April 28, 1995, Moss Rehab filed a motion for summary judgment. Moss argued, *inter alia*, that Plaintiffs' complaint failed to state a legally cognizable cause of action against Moss Rehab; that Moss Rehab's conduct was not a proximate cause of White's injury or death; and that, as a matter of law, a driving school did not owe a duty to protect third parties in the general public from the negligent conduct of one of its students. The Superior Court denied Moss Rehab's motion for summary judgment.

---

2. In August 1989, Sharp was evaluated by one of his physicians to determine if Sharp had the neurologic motor capability to be referred to a driving evaluation program. The physician determined that Sharp was an appropriate candidate.

3. The Moss Driving School records reflect that Sharp repeatedly turned wide when making right-hand turns from a two-lane one-way street on to a similar two-lane one-way street. When turning from the inside or right-most lane onto the other street, Sharp would end up in the outer or left-most lane.

The consolidated actions were tried before a jury in October and November 1995. Moss Rehab filed a motion for judgment as a matter of law at the close of Plaintiffs' evidence. The Superior Court denied this motion. Moss Rehab renewed its motion at the close of all of the evidence. The Superior Court again denied the motion.

On November 2, 1995, the jury returned a verdict for Plaintiffs in the amount of $371,-900.[4] On November 15, 1995, Moss Rehab filed a motion requesting judgment as a matter of law. The Superior Court again denied the motion. This is Moss Rehab's direct appeal from the final judgment of the Superior Court.

### Plaintiffs' Allegation
### Educational Malpractice Claim

■ Moss Rehab contends that Plaintiffs' complaint stated a third-party claim for educational malpractice. Moss Rehab further asserts that such a cause of action has not been, and should not be, recognized in Delaware as a matter of common law. Therefore, Moss Rehab argues that the Superior Court improperly denied their motion for summary judgment. Plaintiffs, however, assert that their complaint was not based upon educational malpractice. Instead, they contend that their complaint set forth allegations of well-established common-law negligence by Moss Rehab.

This Court has concluded that, although the Plaintiffs' complaint did not use the words "educational malpractice," it asserts such a cause of action. The complaint alleges that Moss Rehab was negligent in evaluating, recommending and training Sharp to drive a motor vehicle. The terms of those allegations encompass the traditional aspects of education. Therefore, despite Plaintiffs' contention to the contrary, this Court concludes that the allegations against Moss Rehab in the complaint constitute a claim of educational malpractice. *Cf. Brantley v. District of Columbia*, D.C.Ct.App., 640 A.2d 181, 183 (1994) ("regardless of the phrasing of [plaintiff's] pleadings, the gravamen of her complaint is that [defendants] have engaged in 'educational malpractice' ").[5]

A claim for educational malpractice is generally brought directly by a student against an educational institution. These cases involve allegations that, as a result of the institution's negligent instruction, the student received an inadequate education. *See generally* John G. Culhane, *Reinvigorating Educational Malpractice Claims: A Representational Focus*, 67 WASH.L.REV. 349 (1992).

Educational malpractice claims may also be brought by a third party. *Id.* In those cases, third parties allege that they were injured by the school's former student due to the school's negligence in educating that student. The present case against Moss Rehab is a third-party claim for educational malpractice.

■ This case presents a question of first impression. We must determine whether a third-party claim of educational malpractice against a driving school is a cognizable common-law cause of action in Delaware.[6] In

---

4. To date, Plaintiffs have collected $100,000 from Sharp, representing the policy limits of his automobile insurance. Plaintiffs have also collected $100,000 from another driver defendant, pursuant to the terms of a pre-verdict high-low agreement.

5. *See also Armstrong v. Data Processing Inst., Inc.*, Fla.Dist.Ct.App., 509 So.2d 1298, 1299 (1987) ("regardless of the nomenclature, the gravamen of [plaintiffs' claim] is a cause of action for educational malpractice"); *Doe v. Board of Educ.*, Md.Ct.App., 295 Md. 67, 453 A.2d 814, 815 (1982) ("Although the appellants' argument is replete with allegations of actionable negligence it is clear that the gravamen of their suit is that of the coveted tort of 'educational malpractice.' "); *Hoffman v. Board of Educ.*, N.Y.Ct.App.,

49 N.Y.2d 121, 424 N.Y.S.2d 376, 400 N.E.2d 317, 319 (1979) ("[I]t should be stated that although plaintiff's complaint does not expressly so state, his cause of action sounds in 'educational malpractice.' ").

6. As the Court of Appeals of New York recognized:

The fact that a complaint alleging "educational malpractice" might on the pleadings state a cause of action within traditional notions of tort law does not, however, require that it be sustained. The heart of the matter is whether, assuming that such a cause of action may be stated, the courts should, as a matter of public policy, entertain such claims. We believe they should not.

making that determination, this Court has examined the law of other jurisdictions and other areas of Delaware law.

### Other Jurisdictions
### Educational Malpractice Claims

Courts in at least ten states and the District of Columbia have considered and declined to hold that a claim for educational malpractice is a cognizable common-law cause of action.[7] Most of those educational malpractice claims involved *direct* causes of action brought by a student against an educational institution. One case, however, did address a *third-party* educational malpractice claim. *Moore v. Vanderloo,* Iowa Supr., 386 N.W.2d 108 (1986).

In *Moore,* the plaintiff sued both her chiropractor and the educational institution he had attended, claiming the institution negligently failed to properly educate its student.[8] *Id.* at 111. The Iowa Supreme Court held, in *Moore,* that a third-party educational malpractice claim is not a valid cause of action at common law in Iowa. In doing so, it noted that, with one exception, the courts that have addressed the issue have refused to recognize a direct common-law cause of action for educational malpractice. *Id.* at 114. Although the Iowa Supreme Court acknowledged that the direct cause of action cases arose in different factual contexts, it concluded that the public policy considerations were the same.[9] *Id.*

---

*Donohue v. Copiague Union Free Sch. Dist.,* N.Y.Ct.App., 47 N.Y.2d 440, 418 N.Y.S.2d 375, 391 N.E.2d 1352, 1354 (1979).

7. *See, e.g., Blane v. Alabama Commercial College, Inc.,* Ala.Supr., 585 So.2d 866 (1991) (rejecting educational malpractice cause of action); *D.S.W. v. Fairbanks N. Star Borough Sch. Dist.,* Alaska Supr., 628 P.2d 554 (1981) (same); *Peter W. v. San Francisco Unified Sch. Dist.,* Ct.App., 60 Cal.App.3d 814, 131 Cal.Rptr. 854 (1976) (seminal case concluding there was no duty of care on part of defendants toward plaintiff upon which to base negligence cause of action and thereby rejecting tort of educational malpractice based on claim of functional illiteracy); *Brantley v. District of Columbia,* D.C.Ct.App., 640 A.2d 181 (1994) (refusing to recognize educational malpractice cause of action); *Tubell v. Dade County Pub. Sch.,* Fla.Dist.Ct.App., 419 So.2d 388 (1982) (same); *Wickstrom v. North Idaho College,* Idaho Supr., 111 Idaho 450, 725 P.2d 155 (1986) (stating Idaho does not recognize educational malpractice cause of action); *Rich ex rel. Rich v. Kentucky Country Day, Inc.,* Ky.Ct.App., 793 S.W.2d 832 (1990) (refusing to recognize educational malpractice cause of action); *Doe v. Board of Educ.,* Md.Ct.App., 295 Md. 67, 453 A.2d 814 (1982) (same); *Hunter v. Board of Educ.,* Md.Ct.App., 292 Md. 481, 439 A.2d 582 (1982) (same); *Swidryk v. Saint Michael's Med. Ctr.,* N.J.Super.Ct.Law Div., 201 N.J.Super. 601, 493 A.2d 641 (1985) (same); *Hoffman v. Board of Educ.,* N.Y.Ct.App., 49 N.Y.2d 121, 424 N.Y.S.2d 376, 400 N.E.2d 317 (1979) (same); *Donohue v. Copiague Union Free Sch. Dist.,* N.Y.Ct.App., 47 N.Y.2d 440, 418 N.Y.S.2d 375, 391 N.E.2d 1352 (1979) (often-cited case refusing to recognize educational malpractice tort based on claim that school failed to adequately educate student); *Poe v. Hamilton,* Ohio Ct.App., 56 Ohio App.3d 137, 565 N.E.2d 887 (1990) (stating public policy precludes cause of action for educational malpractice); *see also Ross v. Creighton Univ.,* 7th Cir., 957 F.2d 410 (1992) (holding that Illinois Su-

preme Court would refuse to recognize the tort of educational malpractice).

8. In *Moore,* the Iowa Supreme Court considered whether an injured third party can successfully assert a negligence action against an educational institution for improperly teaching a student. *Moore v. Vanderloo,* 386 N.W.2d at 111. In that case, the plaintiff suffered a stroke after undergoing a cervical manipulation by her doctor, a graduate of Palmer College of Chiropractic ("Palmer"). *Id.* The plaintiff sued both her doctor and Palmer. She alleged that Palmer was negligent in failing to properly research and teach her doctor the risk of stroke from chiropractic manipulation of the neck. *Id.* The trial court granted Palmer's motion for summary judgment, regarding it as a motion to dismiss for failure to state a claim upon which relief can be granted. *Id.* That judgment was affirmed by the Iowa Supreme Court. *Id.* at 112.

9. First, the court noted that there was not a satisfactory standard of care by which to measure the educator's conduct. *Moore v. Vanderloo,* 386 N.W.2d at 114. The court explained that it was not prepared to determine what a reasonable chiropractic college would have taught its students. *Id.* Second, the court acknowledged the inherent uncertainty in determining the cause and nature of any damages. *Id.* The court noted that this uncertainty was particularly persuasive in that case because it involved a third-party claim against Palmer for what it failed to teach the doctor, who had graduated from Palmer four years earlier. *Id.* Third, the court indicated its concern that allowing a third-party educational malpractice claim would result in a flood of litigation burdening the schools. *Id.* The court reasoned that any time a direct negligence claim was brought against a former student, a third-party claim would also be brought against the educational institution which

The Iowa Supreme Court noted that the issue of competency is closely related to the licensing scheme for chiropractors provided by the legislature. *Id.* at 115. The Iowa Supreme Court concluded that it should not "interfere with legislatively defined standards of competency." *Id.* Accordingly, the Iowa Supreme Court declined to recognize a common-law cause of action by a third party for educational malpractice against the allegedly negligent chiropractor's *alma mater.*

### Dram Shop Cases
### Analogous Precedents

The operation of motor vehicles and the distribution of alcohol beverages are two activities that are highly regulated by statute in Delaware. Although this Court has never been called upon to address a common-law claim for education malpractice, it has considered both direct and third-party common-law theories of Dram Shop liability.[10] *Samson v. Smith,* Del.Supr., 560 A.2d 1024 (1989); *Wright v. Moffitt,* Del.Supr., 437 A.2d 554 (1981). Accordingly, this Court's analysis in Dram Shop cases is instructive in determining whether Plaintiffs assert a cognizable third-party common-law claim for educational malpractice in this case.

In *Wright,* an intoxicated patron brought suit against the tavern that had served him alcoholic beverages. After leaving the tavern, the intoxicated patron was struck by an automobile. In *Wright,* the plaintiff argued that this Court should recognize a *direct* common-law Dram Shop cause of action, as part of our "historic function of developing the law in light of the circumstances in which an issue arises." *Wright v. Moffitt,* 437 A.2d at 555. This Court acknowledged the judicial role and responsibility in developing the common law. We explained, however, that historically, Delaware's jurisprudence recognized that the General Assembly had assumed the statutory power and responsibility of licensing and regulating the sale of alcoholic beverages for the benefit of public use.

This Court concluded that "the creation of a cause of action against one who is licensed to sell alcoholic beverages ... involves public policy considerations which can best be considered by the General Assembly." *Id.* at 556. Accordingly, in *Wright,* this Court held there was no common-law right to bring a *direct* cause of action on the theory of Dram Shop liability. *Id.*

In *Samson,* this Court declined to recognize a common-law cause of action against a tavern operator for injuries to a *third party* caused by an intoxicated patron. In *Samson,* an intoxicated patron left a bowling establishment where he had consumed eight beers in a three and one-half hour period. Shortly after leaving the establishment, he failed to stop at a red light and his vehicle struck another vehicle. The driver of the other automobile, who sustained serious bodily injury, brought suit against the intoxicated driver and the establishment where the intoxicated driver had been drinking. On appeal, this Court affirmed the Superior Court's judgment, holding that there is no common-law cause of action against a tavern operator by a third party, who is injured off the premises of the tavern by a patron who became intoxicated at the tavern. *Samson v. Smith,* 560 A.2d at 1025.

In *Samson,* this Court relied upon its prior decision in *Wright,* stating: " '[I]n our view, the General Assembly is in a far better position than this Court to gather the empirical data and to make the fact finding necessary to determine what the public policy should be as to a Dram Shop law, and the scope of any such law.' " *Id.* at 1027 (quoting *Wright v. Moffitt,* 437 A.2d at 556.) This Court has consistently adhered to this reasoning, most recently stating: "The essential rationale underlying [the Dram Shop] line of cases is that the determination of whether to impose liability on tavern owners for injuries caused by intoxicated patrons involves significant public policy considerations and is best left to the

---

trained its allegedly negligent alumnus. *Id.* at 115. Fourth, the court explained that recognizing a third-party educational malpractice action would force the courts to interfere with the internal operations of an educational institution, which the court was reluctant to do. *Id.* at 115.

10. Dram Shop cases assert either direct or third-party causes of action against tavern owners for injuries caused to or by intoxicated patrons.

General Assembly." *McCall v. Villa Pizza, Inc.*, Del.Supr., 636 A.2d 912, 913 (1994).

### Dram Shop Liability Rationale
### Third–Party Educational Malpractice Claims

This Court's prior decisions in the cases involving causes of action against tavern owners are particularly didactic to the issue of third-party educational malpractice that is before the Court in the case *sub judice. See Acker v. S.W. Cantinas, Inc.*, Del.Supr., 586 A.2d 1178 (1991); *Oakes v. Megaw*, Del. Supr., 565 A.2d 914 (1989); *Samson v. Smith*, Del.Supr., 560 A.2d 1024 (1989); *see also McCall v. Villa Pizza, Inc.*, Del.Supr., 636 A.2d 912 (1994); *Wright v. Moffitt*, Del. Supr., 437 A.2d 554 (1981). In each of those Dram Shop cases, this Court declined to recognize either a direct or a third-party common-law cause of action for personal injuries against a tavern owner. This Court held that, because the General Assembly extensively regulates the liquor industry, the General Assembly should weigh and evaluate the public policy considerations of establishing a statutory cause of action against tavern owners.

In Delaware, driver competency is also extensively regulated by statute. The General Assembly regulates the necessary qualifications to obtain a driver's license. 21 *Del.C.* § 2707. The General Assembly mandates the examination of applicants for a driver's license. 21 *Del.C.* § 2713. The General Assembly, by statute, specifically provides for the medical evaluation of drivers. 21 *Del.C.* § 2724. The General Assembly has given the Department of Public Safety the power to issue drivers' licenses with restrictions suitable to the licensee's driving ability. 21 *Del.C.* § 2722.

The General Assembly also regulates commercial driver training schools by statute. 21 *Del.C.* ch. 83. The General Assembly has given the Secretary of Public Safety ("Secretary") the power to adopt and prescribe such regulations concerning commercial driving schools as are necessary to protect the public. 21 *Del.C.* § 8302(a). The General Assembly also directed the Secretary to inspect the school facilities and equipment and to examine the applicants for instructor's licenses. 21 *Del.C.* § 8302(a). Additionally, the General Assembly has mandated that no driver training school shall be established and no person shall act as an instructor unless the school or person applies for and obtains a license from the Secretary. 21 *Del.C.* §§ 8303(a), 8304(a). The General Assembly has set forth the basic requirements, to be adopted by the Secretary, for licenses to operate a driving school and to serve as a driving instructor. 21 *Del.C.* §§ 8303(b), 8304(b). Finally, the General Assembly has given the Secretary the authority to cancel, suspend, revoke or refuse to issue or renew a driving school's or driving instructor's license if the school or instructor has violated any provision set forth by the General Assembly or any regulation adopted by the Secretary. 21 *Del.C.* § 8306.

### Third–Party Claim
### Driver Education Malpractice
### Not Cognizable at Common Law

This Court has been vigilant in discharging its responsibility to preserve and advance Delaware's common-law heritage. *See, e.g., Beattie v. Beattie*, Del.Supr., 630 A.2d 1096 (1993) (abrogating common-law doctrine of interspousal immunity).[11] The General Assembly has been equally assiduous in enacting statutory causes of action that it deems

---

11. *See also Travelers Indem. Co. v. Lake*, Del. Supr., 594 A.2d 38 (1991) (abandoning doctrine of *lex loci delicti* and adopting "most significant relationship" test for resolving choice of law questions in tort actions); *Garrison v. Medical Ctr. of Del., Inc.*, Del.Supr., 581 A.2d 288 (1989) (recognizing actionable claim for negligent performance of medical procedure and negligent delay in transmitting results of tests as they relate to child born with birth defect, but refusing to recognize action for "wrongful life"); *Unocal Corp. v. Mesa Petroleum Co.*, Del.Supr., 493 A.2d 946, 957 (1985) ("[O]ur corporate law is not static. It must grow and develop in response to, indeed in anticipation of, evolving concepts and needs. Merely because the General Corporation law is silent as to a specific matter does not mean that it is prohibited."); *Weinberger v. UOP, Inc.*, Del.Supr., 457 A.2d 701, 712–13 (1983) (rejecting exclusive use of Delaware block method in valuation proceedings and stating "[i]t is time we ... bring our law current on the subject").

to be in the best interest of the public, after carefully weighing and balancing competing policy considerations. *See, e.g.,* 10 *Del.C.* §§ 3721–3725 (Wrongful Death Actions); 19 *Del.C.* ch. 23 (Workers' Compensation); *see also Hill v. Moskin Stores, Inc.,* Del.Supr., 165 A.2d 447, 451 (1960) (explaining that policy of Workers' Compensation law is "to take the whole subject out of the field of negligence"); *Luff v. Hawkins,* Del.Super., 551 A.2d 437, 438 (1988) (explaining that Wrongful Death Act was enacted to provide new and independent cause of action to fill void in the common law).[12] The *ratio decidendi* of this Court in *Samson* applies with equal force to a third-party claim for educational malpractice against a driving school. *Samson v. Smith,* Del.Supr., 560 A.2d 1024 (1989).

Just as the General Assembly has exercised its statutory power to license and regulate the sale of alcoholic beverages, the General Assembly has exercised its statutory power to oversee the licensing of drivers, and the licensing of driver training institutions. *See, e.g.,* 21 *Del.C.* ch. 27 (Driver's Licenses); 21 *Del.C.* ch. 83 (Commercial Driver Training School Licensing). The General Assembly is best able to address the competing public policy issues that must be reconciled with regard to recognizing a third-party claim for educational malpractice by a driving school. Accordingly, this Court declines to recognize a common-law third-party cause of action for educational malpractice against a driving school. *Accord Moore v. Vanderloo,* Iowa Supr., 386 N.W.2d 108 (1986).

### Conclusion

A third-party claim for educational malpractice against a driving school is not a cognizable common-law cause of action in Delaware. Accordingly, the decision of the Superior Court denying Moss Rehab's motion for summary judgment is reversed. This matter is remanded to the Superior Court for the purpose of entering judgments in accordance with this opinion.

---

**12.** This Court has acknowledged that the two primary purposes of the Workers' Compensation law are to provide prompt payment of benefits without regard to fault and to relieve employers and employees of the burden of civil litigation. *Champlain Cable Corp. v. Employers Mut. Liab. Ins. Co.,* Del.Supr., 479 A.2d 835, 840 (1984). By adopting the Workers' Compensation law, the General Assembly was necessarily required to balance the policy considerations of such legislation. The General Assembly achieved the appropriate balance by adopting a Workers' Compensation law which eliminates questions of fault in industrial accidents and substitutes a reasonable scale of compensation for the common-law reme- dies. *Hill v. Moskin Stores, Inc.,* 165 A.2d at 451; *see Kofron v. Amoco Chems. Corp.,* Del. Supr., 441 A.2d 226, 231 (1982) (holding that all employee actions against employers for work-related injuries based on any degree of negligence are within exclusive coverage of Workers' Compensation law and may not be maintained under common law); *see also id.* ("While legislatures in other states have specifically allowed employees to proceed with a common law cause of action based on the theory that their employers maintained a dangerous working environment with the intent to injure them ... our Legislature has not done so and we decline to act in its stead.").